**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

AKEEM DEONDREA BODDIE,

        Plaintiff,

        v.                        CAUSE NO. 1:19-CV-070-TLS-SLC

KATHLEEN A. MORALES, et al.,

        Defendants.

**OPINION AND ORDER**

Akeem Deondrea Boddie, a prisoner without a lawyer, filed a second amended complaint [ECF No. 49] pursuant to 42 U.S.C. § 1983 regarding events that occurred before he was confined. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the Court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. The Court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Ind. Univ. Bd. of Trs*., 581 F.3d 599, 602 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (internal quotation marks and citation omitted). A plaintiff can plead himself out of court if he pleads facts that preclude relief. *See*

*Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). In addition, the Federal Rules of Civil Procedure provide that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). When the plaintiff references and relies on it, "the contents of that document become part of the complaint and may be considered as such when the court" determines the sufficiency of the complaint. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## BACKGROUND

In his second amended complaint, Boddie claims Detective Kathleen Morales of the Fort Wayne Police Department violated his constitutional rights. He begins his recitation of the facts by alleging Detective Morales "had [him] seized" on May 1, 2017, at approximately 8:45 AM and "brought against his will, unknowingly to the Fort Wayne Indiana Police Station." ECF No. 49-1 at 3. A little over an hour later, he was placed in an interview room and shackled to the floor by another officer who is not named as a defendant. Boddie proceeded to clean the mud and grass off his sneakers, and he urinated in the corner of the room. He insists he did not attempt to step in his own urine. At about 10:25 AM, Detective Morales entered the interview room and informed Boddie he was under arrest for burglary, battery, stolen vehicle, and theft. Boddie claims Detective Morales never produced an arrest or search warrant. She asked him if he would like to make a statement. When Boddie refused, Detective Morales left the room "for hours leaving the plaintiff under the false impression he [was] under arrest and being charged with the above mentioned crimes." *Id*. at 4.

According to Boddie, he was left in the room for so long that he fell asleep on top of the table.[1] He was woken when Detective Morales returned with Officer Ricky Allen Brumett, who is not named as a defendant in this action. Boddie was photographed, swabbed for DNA, and stripped of his clothes and personal items. He was never shown a copy of the search warrant, which he attaches to the second amended complaint.[2] When the search was complete, he was placed in a jumpsuit and transported to the Allen County Jail, which ended his interactions with Detective Morales. He describes the encounter as causing him great mental and emotional distress.

He was detained at the Allen County Jail beginning on May 1, 2017. On May 2, 2017, he was brought before a judge for an initial hearing on his Class A Misdemeanor Criminal Conversion charge. Those charges were dropped the same day they were filed. He remained in the Allen County Jail until May 8, 2017, when he was released "without a search warrant nor any of his personal property," including his wedding band. *Id*. at 5. After his release, he went to the Fort Wayne Police Department to recover his wedding band, but he was told they did not have it.

Boddie claims "[n]o criminal charges were ever filed against the plaintiff in connection with or in support of the seizure and imprisonment to which the plaintiff was subjected." *Id*. at 6. He also claims that after the Criminal Conversion charges were dropped on May 2, 2017, "probable cause was never established . . . [and] the plaintiff was further detain[ed] for another 24 hours" in lock up which caused him great mental anguish. *Id*. Boddie states that, between May 1, 2017, and May 8, 2017, he was never taken before a magistrate judge with regard to any

---

[1] However, Boddie also indicates that the entire encounter with the defendant took place on May 1, 2017, from 9:55 AM to 1:58 PM. ECF No. 49 at 1.

[2] He describes this warrant as insufficient and not in compliance with Indiana Code § 35-33-5-3 because "it contains no date nor time as to when it was executed there is no signature of any Fort Wayne Police officer to which is and or was the warrants (sic) executioner." ECF No. 49-1 at 4.

3

"burglary, battery, [or] stolen vehicle" crimes. *Id*. at 7. He seeks monetary damages against Detective Morales and the return of his personal property.

What Boddie does not mention outright in his second amended complaint—but did allege in his first amended complaint[3]—is that he was originally detained pursuant to an investigatory stop related to the criminal conversion matter. Specifically, Boddie previously alleged he "participated in what is known as a (show-up) where the petitioner was identified by a (sic) assistant store manager as the subject who took two cases of beer out of the [Walgreens] store without paying. The petitioner was positively identified but not taken directly to the Allen County Jail." ECF No. 34 at 2. After being identified, he was transported to the Fort Wayne Police Department at the request of Detective Morales and questioned there as outlined above.

Boddie has sued Detective Morales for "perjury,[4] false arrest, unreasonable search and seizure, violation of procedural due process and or due process, and infliction of emotional distress" under the Constitution as well as state law. ECF No. 49-1 at 2. He seeks monetary damages and the return of his personal property.

## ANALYSIS

### A.     False Arrest/False Imprisonment

In order to prevail on a false arrest or false imprisonment claim brought pursuant to the Fourth Amendment, the plaintiff must show a lack of probable cause. *McBride v. Grice*, 576 F.3d 703, 706–07 (7th Cir. 2009); *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993). "Probable cause is an absolute defense to any claim under § 1983 for wrongful arrest or false

---

[3] The first amended complaint is no longer controlling, but its allegations cannot now be contradicted or negated by the second amended complaint. *See, e.g.*, Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief . . . the factual contentions have evidentiary support.")

[4] Perjury is a criminal matter and is not actionable under 42 U.S.C. § 1983.

4

imprisonment." *Bailey v. City of Chicago*, 779 F.3d 689, 694 (7th Cir. 2015); *see also Norris v. Serrato*, 761 F. App'x 612, 615 (7th Cir. 2019) (stating that the existence of probable cause precludes § 1983 claims "for an allegedly unreasonable seizure, whether a false arrest or a wrongful pretrial detention"). "Police officers have probable cause to arrest an individual when 'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (citation omitted); *see also Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021) ("[P]robable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." (quoting *Whitlock v. Brown*, 596 F. 3d 406, 411 (7th Cir. 2010))).

Here, the Affidavit for Probable Cause attached to the second amended complaint describes the events related to the criminal conversion and/or theft at Walgreens in detail. *See* ECF No. 49-2 at 1–2. In the Affidavit, Officer Kyra D. Woods of the Fort Wayne Police Department attests she was dispatched to a Walgreens store on May 1, 2017, in response to a theft. She spoke with the assistant manager there who advised her that a black male had just stolen two cases of beer and left in a vehicle described as a blue HHR with license plate IGWTSXL583. The video surveillance from Walgreens confirmed that a male subject wearing a dark hoodie with white writing on the back, dark pants, and white/light colored shoes entered the Walgreens at 8:12 AM and left a short time later with two cases of beer in his hands. A different

officer, Officer Lewis, located the blue HHR, which belonged to a woman named Deloris[5] Kelly,

in an alley. Officer Lewis advised that he saw two subjects—one of whom matched the

description of the person from the Walgreens theft and was carrying two cases of beer—walk

from near the blue HHR's location to a minivan parked in the driveway of the residence. Officer

Lewis made contact with the men and identified Boddie as the subject wearing the dark hoodie,

dark pants, and white shoes. The assistant manager was transported to the scene by Officer

Woods, where he positively identified Boddie as the subject that took two cases of Bud Light

from the Walgreens store without paying and left in the blue HHR. Officer Woods lists Boddie's

previous convictions for criminal conversion and states that he was charged and arrested for

theft. The Affidavit is signed by Officer Woods, dated May 1, 2017, and notarized. Boddie does

not dispute any of the details set forth in the Affidavit. Rather, he simply states that he was never

interviewed or placed under arrest by Officer Woods.[6] *See* ECF No. 49-1 at 9 nn.1–2.

Boddie's previous allegation that an assistant store manager positively identified him to

the police as the individual who "took two cases of beer out of the store without paying," ECF

No. 34 at 2, coupled with the Affidavit written by Officer Woods that is attached to the second

amended complaint, permit a reasonable person to believe a crime had been committed. *See*

*McBride*, 576 F.3d at 707. Specifically, criminal conversion is committed when an individual

"knowingly or intentionally exerts unauthorized control over property of another person." Ind.

Code § 35-43-4-3(a).[7] Although Boddie states no probable cause existed for an arrest on

---

[5] According to other attached documents, it appears the correct spelling of Ms. Kelly's first name is
Deloise.

[6] The Affidavit does not state Officer Woods was the one to arrest or interview Boddie.

[7] In his second amended complaint, Boddie states he was detained in the Allen County Jail on May 1,
2017, on charges for Class A Misdemeanor Criminal Conversion, which were dropped on May 2, 2017.
ECF No. 49-1 at 5. He attaches the state court docket sheet showing the same. ECF No. 49-2 at 3–4.

burglary, battery, stolen vehicle, or theft charges, a Fourth Amendment claim cannot succeed if there was probable cause to arrest him for *any* offense. *See Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007) ("[T]he Supreme Court rejected '[t]he rule that the offense establishing probable cause must be closely related to, and based on the same conduct as, the offense identified by the arresting officer at the time of the arrest.'" (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004))); *see also United States v. Williams*, 495 F.3d 810, 818 (7th Cir. 2007) (stating that once officers established probable cause to arrest a defendant, "it is irrelevant that their investigation eventually found evidence of other crimes, that he was originally charged with those other crimes, or that the [sic] those crimes were charged based on an investigation that dragged out longer than was warranted by their original suspicion"). The fact that the criminal conversion charges were dropped and additional charges were added later does not negate the existence of probable cause at the time he was detained.[8] Thus, Boddie has not stated a claim for unreasonable seizure related to being "brought against his will, unknowingly" to the Fort Wayne Police Station, whether categorized as a false arrest or a wrongful pretrial detention. *See Norris*, 761 F. App'x at 615.

## B. Unreasonable Search and/or Seizure

Boddie alleges the search and seizure that occurred in the interview room was unconstitutional. "[A] search of an arrestee's person [is] *per se* reasonable under the Fourth Amendment." *United States v. Gary*, 790 F.3d 704, 709 (7th Cir. 2015) (citing *United States v.*

---

[8] Confusingly, Boddie initially states he was "never placed (under arrest) or charged with any crime at the time of his seizure" on May 1, 2017. ECF No. 49-1 at 3. However, he later states he was detained "from May 1, 2017 up until his initial hearing for a Class A Misdemeanor Criminal Conversion on May 2, 2017 to which the charges were immediately dropped." *Id*. at 5. In any event, as noted above, he cites to the attached state court docket sheet, which confirms he was indeed charged with Criminal Misdemeanor Conversion on May 1, 2017, and that the initial hearing for that charge was held on May 2, 2017, and was subsequently dismissed. ECF No. 49-2 at 3–4.

*Robinson*, 414 U.S. 218, 235 (1973)). "This rule extends to personal effects found on the arrestee's person at the time of arrest." *Id*. Clothes taken from an individual while in custody and the seizure of any incriminating evidence found in them are "plainly searchable" pursuant to an arrest. *Id*.; *see also United States v. Jackson*, 377 F.3d 715, 716 (7th Cir. 2004) ("[I]t is reasonable for the police to search the body, clothing, and immediate possessions of anyone in custody following an arrest on probable cause[,] . . . with or without any reason to suspect that the person is armed or carrying contraband."). Similarly, when an arrest is supported by probable cause, "taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment." *United States v. Schreiber*, 866 F.3d 776, 780 (7th Cir. 2017) (quoting *Maryland v. King*, 569 U.S. 435, 465–66 (2013)).[9]

Boddie states he should not have been searched because there was not probable cause to arrest him for burglary, battery, stolen vehicle, or theft. However, as noted above, because there was probable cause to arrest him for criminal conversion, the items on his person were plainly searchable upon arrest, *see Gary*, 790 F.3d at 709; *Jackson*, 377 F.3d at 716, and the DNA swab was within constitutional bounds, *see Schreiber*, 866 F.3d at 780.

More importantly, to the extent Boddie asserts he was not under arrest at the time of the search and, accordingly, the seizure and search that occurred in the interview room were unconstitutional, his complaint still fails to state a claim. He has attached a search warrant, signed by an Allen Superior Court Judge on May 1, 2017, at 1:58 PM, to the second amended

---

[9] In *Schreiber*, police collected a DNA swab after a suspect was arrested for robbery of a liquor store. 866 F.3d at 778. That DNA swab was then matched to a bank robbery that had occurred six months earlier, and the suspect was charged with bank robbery in federal court. *Id*. at 778–79 The defendant moved to suppress the DNA swab in the bank robbery case, but the court concluded it was constitutional because the liquor store robbery arrest had been supported by probable cause. *Id*. at 778–79, 781.

complaint.[10] ECF No. 49-2 at 12. The warrant directs the Fort Wayne Police Department to search Boddie's person for "human blood, human hair, human cells, and/or human saliva" and to collect all clothing that was worn by him. *Id*. The warrant lists a control number (17F052085) related to the investigation on the top left side of the document.

Also attached to the second amended complaint is a related Search Warrant Affidavit by Detective Morales. *See* ECF No. 49-2 at 9–11. In it, Detective Morales attests she was contacted by Detective M. Epps of the Fort Wayne Police Department with regard to a burglary, battery, stolen vehicle, and theft investigation that occurred on May 1, 2017. Detective Epps advised that a burglary and battery had been reported by Deloise Kelly in the early morning hours of May 1 after a black male broke into her home and injured her. Ms. Kelly had been transported to the hospital due to a brain bleed, a nasal fracture, and numerous lacerations that required sutures. Detective Epps advised that photographs had been taken of the scene that included several bloody shoe prints near the point of entry and exit, and that a broken blade and knife handle were collected. He also advised that Ms. Kelly's vehicle was subsequently reported stolen on May 1, 2017, after a black male subject had committed theft of alcohol from a Walgreens nearby. Detective Epps informed Detective Morales that the Walgreen's store manager had taken a picture of the blue Chevy HHR with license plate #SXL583 as the black male suspect fled the scene. The license plate matched that of Ms. Kelly's stolen vehicle, which was recovered a short time later in the alley behind her home. Boddie was located a short distance away from there, attempting to sell the same type of alcohol that had been stolen from the Walgreens. The Walgreens manager then positively identified Boddie as the person he had observed driving

---

[10] *See Williamson*, 714 F.3d at 436 ("'[W]ritten instruments' attached to a pleading become part of that pleading for all purposes.")

away from the Walgreens in the blue HHR after he had stolen the alcohol. The Search Warrant Affidavit states that, based on the foregoing, Detective Morales had reason to believe the same person who stole the alcohol from the Walgreens—having been previously identified as Boddie—also broke into Ms. Kelly's home and had committed burglary, battery, stolen vehicle, and theft. As such, she requested that body standards and clothing be collected from Boddie to compare it to the evidence collected on the scene at Ms. Kelly's home. The Search Warrant was signed by Detective Morales, a deputy prosecuting attorney from Allen County, and an Allen Superior Court judge on May 1, 2017. The control number on the Search Warrant Affidavit (17F052085) matches the control number on the search warrant described above.

"An arrest or search pursuant to a valid warrant is presumptively constitutional unless the officer seeking the warrant intentionally or recklessly misstated or omitted material facts to obtain the warrant, and there would not have been probable cause had the testimony been accurate." *Gatzimos v. Garrett*, 431 F. App'x 497, 500 (7th Cir. 2011). Boddie does not plausibly allege any material facts were misstated or omitted by Detective Morales to obtain the warrant. Instead, he takes issue with the title on the search warrant itself, which appears to contain a typographical error.[11] Although the title at the top of the search warrant says "Search Warrant *Affidavit*," ECF No. 49-2 at 12 (emphasis added), the formatting and contents of that document make it clear it is the search warrant itself,[12] which was supported by probable cause as described

---

[11] Boddie's second amended complaint states, "See the Plaintiff Exhibit #7 its (sic) is labeled as search warrant affidavit its (sic) is not in compliance with the statute to be a sufficient search warrant affidavit see IC Code 35-33-5-2 it is not what is labeled to be this is misleading its (sic) is also not in compliance with the statute being a sufficient search warrant see IC Code 35-33-5-3 it contains no date nor time as to when it was executed there is no signature of any Fort Wayne police officer to which is and or was the warrants (sic) executioner (fact)." ECF No. 49-1 at 4.

[12] Indeed, Boddie also attaches an Affidavit filed by Detective Morales during later post-conviction proceedings that states, "I executed a search warrant affidavit dated May 1, 2017, seeking the collection of body standards and clothing from Akeem D. Boddie . . . . I have examined the one (1) page document, also entitled "Search Warrant Affidavit " . . . [which] is actually the search warrant corresponding to the

in the actual Search Warrant Affidavit, ECF No. 49-2 at 9–11; *see McBride*, 576 F.3d at 707 (explaining that probable cause is established when the facts permit a reasonable person to believe a crime had been committed). Such a typographical error is not material to the contents of the warrant and does not negate the probable cause established by the Search Warrant Affidavit.

Moreover, although Boddie takes issue with the formatting of the warrant and the Search Warrant Affidavit, the court has reviewed both documents and finds that, when considered together, they are substantially in the forms prescribed by state law, and, accordingly, are "treated as sufficient." *See* Ind. Code §§ 35-33-5-2, 35-33-5-3. Despite Boddie's assertions to the contrary, the Search Warrant—which was subscribed and sworn before an Allen Superior Court Judge on May 1, 2017—is signed by Detective Morales, the Judge, and an Allen County Deputy Prosecuting Attorney. *See* ECF No. 49-2 at 11. The search warrant itself was also signed and dated by the Allen Superior Judge that same day, *see id*. at 12, and, as noted above, both documents contain the same control number so they are clearly linked.

Finally, although Boddie takes issue with the fact that Detective Morales never produced or showed him a copy of the search warrant,[13] "nothing in the [Fourth] amendment requires that the warrant be shown to the person whose premises are to be searched. As a matter of prudence, police will show a search warrant to the person whose premises are to be searched if he questions their authority to conduct the search. But they do not have to." *United States v. Sims*, 553 F.3d 580, 584 (7th Cir. 2009).

---

above-mentioned three (3) page search warrant affidavit. I do not know why the word "Affidavit" was mistakenly included in the title of the search warrant." ECF No. 49-2 at 8.

[13] The second amended complaint states, "She never produce[d] a warrant to arrest nor a warrant to search (ever). . . . During this encounter there is still no production of a warrant to arrest or search by either officer." ECF No. 49-1 at 4.

Accordingly, Boddie's allegations with regard to the search and seizure that occurred in the interview room are either directly contradicted by the documents he attaches to his second amended complaint or are otherwise insufficient to render the search by Detective Morales unconstitutional considering the existence of the facially valid warrant. *See, e.g.*, *Williamson*, 714 F.3d at 443–44 (stating that to rebut the general rule that a claim for unreasonable search cannot proceed if a facially valid warrant exists, the plaintiff would have to show both that there was not probable cause to believe a crime had been committed and that the officers knew it); *see also Bissessur*, 581 F.3d at 602 (stating that to survive dismissal, a complaint must state a claim for relief that is plausible on its face). Thus, Boddie has not stated a plausible claim for unlawful search or seizure against Detective Morales.

## C. Conditions of Confinement

Boddie alleges the conditions he was held in while he was being interviewed were unconstitutional. He states that "all events took place before the plaintiff was ever charged sentence[d] and or convicted." ECF No. 49-1 at 2. Arrestees are protected by the Fourth Amendment before the probable cause hearing mandated by *Gerstein v. Pugh*, 420 U.S. 103 (1975); after a finding of probable cause, pretrial detainees are protected by the Fourteenth Amendment. *Pulera v. Sarzant*, 966 F.3d 540, 549 (7th Cir. 2020) (citing *Currie v. Chhabra*, 728 F.3d 626, 629–30 (7th Cir. 2013)). The standards are effectively the same—namely, an objective unreasonableness inquiry. *Id*. at 550 (citing *Estate of Perry v. Wenzel*, 872 F.3d 439, 453 (7th Cir. 2017); *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018)). In order to sustain a claim under either standard, a plaintiff must demonstrate the defendants' actions were "objectively unreasonable" and that those actions caused his injuries. *Id*. (citing *Miranda*, 900 F.3d at 347, 352; *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011)). "Reasonableness,

in turn, must be determined in light of the totality of the circumstances." *Id.* (citing *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018); *Florek v. Village of Mundelein*, 649 F.3d 594, 600 (7th Cir. 2011)). Of note, a showing of negligence or even gross negligence by the defendants will not suffice; rather, a plaintiff must show the defendants "acted purposefully, knowingly, or perhaps even recklessly." *Miranda*, 900 F.3d at 353.

Here, Boddie alleges he was left in the interview room after having his handcuffs removed and being shackled to the floor from approximately 9:55 AM to 10:30 AM, before Detective Morales arrived to question him. During this time, he allegedly urinated in the corner of the room and "clean[ed] mud and grass off his all white sneakers." ECF No. 49-1 at 3. When he refused to make a statement to Detective Morales, she exited the room and left him there "for hours" until he fell asleep on top of the table. *Id.* at 4. However, he also alleges the entire incident—from transportation to the Fort Wayne Police Station through the search—took place between 9:55 AM and 1:58 PM, *see id.* at 1, so it is not plausible to infer he was left this way for an inordinate amount of time. *See Edwards*, 478 F.3d at 830 (explaining a plaintiff can plead himself out of court if he pleads facts that preclude relief). Moreover, Boddie does not allege he asked for, but was specifically denied, water or a bathroom break—he simply alleges that he urinated in the corner. Based on these sparse facts, Boddie has not described any actions by Detective Morales that were objectively unreasonable with regard to the conditions of his detention, so he has not stated a claim against her that is plausible on its face. *See Bissessur*, 581 F.3d at 602 ("A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (citation omitted)).[14]

---

[14] Boddie also alleges that the conditions in the Allen County Jail, where he was transported after the search, were unconstitutional. However, he does not allege Detective Morales participated in those events

**D.      Due Process of Law**

Boddie alleges he was detained in the Allen County Jail for eight days without charges of burglary, battery, stolen vehicle, or theft being filed against him, and he complains that he was not brought before a magistrate judge for an initial hearing on this matter between May 1–8, 2017. He believes this was a violation of his due process rights under the Indiana Constitution. "An individual detained following a warrantless arrest is entitled to a 'prompt' judicial determination of probable cause as a prerequisite to any further restraint on his liberty." *Stafford v. State*, 890 N.E.2d 744, 749 n.9 (Ind. Ct. App. 2008) (citing *Griffith v. State*, 788 N.E.2d 835, 840 (Ind. 2003); *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). "[A] jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Id.* (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991)). To prove a constitutional violation, the plaintiff must show the delay was "both *prejudicial* and unreasonable." *Id.* at 749 (citation omitted).[15]

Boddie states he was "detained in the Allen County Jail lock up from May 1, 2017, up until his initial hearing for a Class A Misdemeanor Criminal Conversion on May 2, 2017, to which the charges were immediately dropped the same day they were filed." ECF No. 49-1 at 5. He cites to a chronological case summary (Case No. 02D05-1705-CM-001940) attached to the second amended complaint in support of his claim. *See* ECF No. 49-2 at 3–4. He alleges a

---

or had any knowledge of the issues described. In fact, he states, "I never saw the defendant Kathleen A. Morales again" after he left the Fort Wayne Police Department. ECF No. 49-1 at 5. Accordingly, she cannot be held liable for the conditions there. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible.").

[15] Of note, the 48-hour reference applies specifically to a probable cause determination, which may be made separately from an initial hearing. Indiana Code § 35-33-7-1(a) provides that a person who is "arrested without a warrant for a crime shall be taken promptly before a judicial officer: (1) in the county in which the arrest is made; or (2) of any county believed to have venue over the offense committed; for an initial hearing in court." Thus, the only requirement for an initial hearing is that it be "prompt."

hearing was never held to determine probable cause on that charge and that he remained in custody at the Allen County Jail until May 8, 2017.

According to publicly available electronic state court dockets,[16] it is true that a case for conversion matching Boddie's allegations (and the chronological summary attached to the second amended complaint as an exhibit) was opened against him on May 2, 2017, and it was dismissed that same day. *See State v. Boddie*, No. 02D05-1705-CM-001940 (Ind. Super. Ct. filed May 2, 2017).[17] The case summary shows a probable cause affidavit was filed and that an initial hearing commenced and concluded that same day prior to the dismissal. However, what Boddie fails to mention or dispute (even though it was addressed in the court's prior screening order, *see* ECF No. 44 at 10–11) is that on May 3, 2017, a case related to domestic violence charges against Boddie was also opened. *See State v. Boddie*, No. 02D04-1705-MC-001201 (Ind. Super. Ct. filed May 3, 2017).[18] In that case, an initial hearing was conducted, probable cause was found, Boddie was ordered by the magistrate to be held for 72 hours until 9:00 AM on May 8, 2017, and he was released on his own recognizance on May 8, 2017. Thus, even if Boddie did not appear before a magistrate for an initial hearing in his conversion case (a claim which the state court docket appears to contradict), it is not plausible to infer that he was prejudiced by this fact considering

---

[16] The court is permitted to take judicial notice of public documents in screening the complaint. *See* Fed. R. Evid. 201; *Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts.").

[17] Available online at: https://public.courts.in.gov/mycase#/vw/CaseSummary/eyJ2Ijp7IkNhc2VUb2tlbiI6ImVXNmRkRy1GMUJlTFE5UDhfRnJVWGJHcTFiQ1IwT3d3MnlyM3RWZjJxTDAxIn19 (last visited Feb. 17, 2022).

[18] Available online at: https://public.courts.in.gov/mycase#/vw/CaseSummary/eyJ2Ijp7IkNhc2VUb2tlbiI6IktDWlRlM1ZFVWpNckFiVmJOWV9ZQVRwV2VSNEtzcGszMjRhMG5uZHFzS1ExIn19 (last visited Feb. 17, 2022).

he was being held over during that time on another matter.[19] *See, e.g.*, *Stafford*, 890 N.E.2d at

749. Thus, he has not stated a plausible due process claim.

Additionally, Boddie alleges his personal items, including his wedding ring, were taken

while he was at the Fort Wayne Police Department and they have yet to be returned to him. The

Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty,

or property, without due process of law." U.S. Const. amend. XIV, § 1. But, a state tort claims

act that provides a method by which a person can seek reimbursement for the negligent loss or

intentional depravation of property meets the requirements of the due process clause by

providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as

for negligent deprivations of property by state employees, the state's action is not complete until

and unless it provides or refuses to provide a suitable postdeprivation remedy.") Indiana's tort

claims act, Indiana Code § 34-13-3-1, et seq., and other laws provide for state judicial review of

property losses caused by government employees, and they afford an adequate post deprivation

---

[19] Boddie alleges he was not charged with burglary, battery, stolen vehicle, or theft from May 1–8, 2017. Of note, however, Boddie was later charged with and convicted of multiple felonies related to the events that occurred on May 1, 2017. *See Boddie v. State*, 113 N.E.3d 817 (Ind. Ct. App. 2018) ("In the early morning hours of May 1, 2017, Deloise Kelly, a seventy-five-year-old woman, heard a crash in her house and, unable to get back to sleep, got up to go to the bathroom. When she walked into her kitchen she was punched in the mouth by an intruder she later identified as Boddie. . . . Kelly's car keys, television, laptop, and car were all missing after the break in. Four hours after the incident, Boddie was seen at a nearby Walgreens in Kelly's car. He stole two cases of beer from the store, returned to Kelly's car, and drove away. The Walgreens assistant manager was able to see the car and driver as it left the parking lot and took several pictures. . . . Shortly thereafter, Officer Scotty Lewis located Kelly's vehicle parked in an alley a few miles from the Walgreens. Officer Lewis observed two men walking out of a residence just north of where the vehicle was found. One of the men was carrying two cases of beer and matched the description of the person who had stolen beer from Walgreens. Officers took the men into custody. Another officer brought the Walgreens assistant manager to a location near the alley so that he could see the men officers had detained. The assistant manager identified Boddie as the person who had taken beer from the Walgreens without paying. The assistant manager also identified Boddie at trial. . . . Police gathered Boddie's clothing and took a swab of his DNA to run against other DNA samples recovered during the investigation. . . . On August 15, 2017, the State charged Boddie with burglary, a Level 1 felony; aggravated battery, a Level 3 felony; and auto theft, a Level 6 felony, for the acts committed against Kelly; and theft, a Level 6 felony, for the acts committed against Walgreens. A jury found Boddie guilty on all counts.").

remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post-deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). Therefore, these allegations do not state a due process claim either.

### E.    Intentional Infliction of Emotional Distress

Finally, Boddie alleges Detective Morales subjected him to intentional infliction of emotional distress. As an independent tort under Indiana law, this requires that the defendant: "(1) engage[] in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). The requirements to prove this tort are "rigorous," and it is found only when the conduct "exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind." *Id.* There are no plausible allegations in Boddie's complaint that Detective Morales engaged in any extreme or outrageous conduct that either intentionally or recklessly caused him severe emotional distress.

### F.    Miscellaneous Motions

Boddie has requested a "Franks Hearing" related to the search warrant [ECF No. 62]. During criminal proceedings,

> [t]he Fourth Amendment requires an evidentiary hearing regarding the veracity of information included in an application for a search warrant where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause. This Court has interpreted the holding of *Franks* to also apply to omissions in affidavits. Therefore, a defendant may also challenge an affidavit by showing that the affiant intentionally or recklessly omitted material information.

*United States v. Robinson*, 546 F.3d 884, 887–88 (7th Cir. 2008) (citations and internal quotation marks omitted). A *Franks* hearing does not apply in civil rights actions, so the motion is denied.

Moreover, even if did apply, it would still be denied because Boddie has not made a substantial preliminary showing that identifies any sort of materially false statement or omission in the Search Warrant Affidavit. He again points to the typographical error in the title of the search warrant, which has already been addressed as materially insignificant. He also reiterates the warrant was not personally served upon him, but that is not required by law. *See Sims*, 553 F.3d at 584. He points to a letter indicating his appellate counsel was not able to locate a copy of the application for the search warrant in the public defender file accumulated by his previous attorney, *see* ECF No. 49-2 at 6, but such a sparse allegation of misplacement does not plausibly suggest it did not, and does not, exist in the record, especially in light of the fact that Boddie himself attached the Search Warrant Affidavit to his second amended complaint. He cites to an initial investigatory police report by Detective Epps, *see* ECF No. 49-4 at 2–3 (partial report only), and argues that it could not possibly have been relied upon by Detective Morales to establish probable cause because his name was not mentioned by Detective Epps. However, that partial report is wholly consistent with the factual allegations set forth in Detective Morales' Search Warrant Affidavit. Moreover, it is clear additional investigation occurred after the partial report was written by Detective Epps that tied Boddie to the alcohol conversion at Walgreens and to Ms. Kelly's vehicle, both of which are mentioned at the end of that report. *Id*. at 3; *see also* ECF No. 49-2 at 1–2 (Affidavit for Probable Cause by Kyra D. Woods). Finally, Boddie argues that his arrest record and the fact that Detective Morales did not complete her final investigation until July of 2017 (which ultimately led to the charges described in *Boddie v. State*, 113 N.E.3d 817 (Ind. Ct. App. 2018)), somehow casts doubt on the statements she submitted in the Search Warrant Affidavit in May, but he does not describe why or which statements are allegedly false. As noted above, Boddie was originally transported to the Fort Wayne Police

Department because there was probable cause to arrest him for criminal conversion related to the theft at Walgreens, so "it is irrelevant that their investigation eventually found evidence of other crimes, that he was originally charged with those other crimes, or that the [sic] those crimes were charged based on an investigation that dragged out longer than was warranted by their original suspicion." *Williams*, 495 F.3d at 818. Nothing in the motion requires a hearing on the matter, nor does it change the analysis above with regard to the lack of any plausible claims being stated in the second amended complaint.

Finally, Boddie has filed a motion requesting that default judgment be entered against Detective Morales [ECF No. 63]. Because the court had not yet screened the second amended complaint as required by 28 U.S.C. § 1915A, she was not requited to answer it. Therefore, she is not in default, and the motion will be denied.

## CONCLUSION

For the foregoing reasons, the Court:

1. DENIES the motion for a hearing [ECF No. 62];

2. DENIES the motion for default judgment [ECF No. 63];

3. DISMISSES the second amended complaint [ECF No. 49] pursuant to 28 U.S.C. § 1915A because it fails to state any plausible claims upon which relief can be granted; and

4. DIRECTS the clerk to close this case.

SO ORDERED on February 18, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT